IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

AMBER L.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 4:18-cv-04122-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10) and the Defendant's Motion for Summary Affirmance (Doc. 12). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Amber L. filed her applications for disability insurance benefits (DIB) and supplemental security income (SSI) on December 3, 2013 and alleged disability beginning on December 1, 2012. Her claims were denied initially on March 19, 2014 and upon reconsideration on November 19, 2014. Amber filed a request for hearing which was held before the Honorable Susan F. Zapf (ALJ) on May 3, 2016. Following that hearing, Amber's claims were denied and she requested review by the Appeals Council (AC). The AC remanded Amber's claims in August 2017. On

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket

December 5, 2017, ALJ Zapf held another hearing at which Amber was represented by counsel, and Amber and a Vocational Expert (VE) testified. Following that second hearing, Amber's claims were denied on February 14, 2018, and her subsequent request for review by the AC was denied. The ALJ's February 2018 became the final decision of the Commissioner and Amber filed the instant civil action seeking review of that Decision on July 6, 2018.

## II

At the December 2017 hearing, Amber was 34 years old, had a 13-year-old daughter, and they lived in an apartment in Port Byron, Illinois. When she applied for disability in December 2013, Amber claimed the following conditions limited her ability to work: fibromyalgia; stomach ulcers; GERD; anemia; spastic colon; ovarian cysts; migraines; seasonal allergies; hypertension; anxiety; depression; TMJ; constipation; and pancreatitis. AR 381.

At that second hearing, Amber testified about her daughter, her physical and mental symptoms, her past trauma (she was previously raped), her medical providers, her boyfriend of over a year, her daily activities, and her medications. The VE was also questioned. The ALJ asked the VE to consider whether the following hypothetical individual could perform any of Amber's past work:

> [An individual] of the same age, education, and having the same past work as this claimant, limited to a range of light work with only occasional climbing ramps and stairs, no climbing ladders, ropes, or scaffolds, occasional stooping, no concentrated exposure to fumes, odors, dust, gases, poor ventilation, and temperature extremes, limited to frequent but not constant bilateral handling and fingering, limited to simple, routine, repetitive tasks that can be learned in 30 days or less. The task must be easily resumed if the claimant has momentary deficits in concentration and attention. She could not perform fast-paced work. Production must be measured on a daily basis. And no more than occasional changes in work processes and procedures. She can have only occasional interaction with coworkers

2

and supervisors of a brief and superficial nature and no interaction with the public.

AR 77-78. The VE responded Amber's past work could not be done. The VE proceeded to cite three light jobs and two sedentary jobs the hypothetical individual could perform. The ALJ added to the hypothetical that the individual would have to stand at her workstation every 30 minutes for up to two minutes at a time to address problems with pain. When asked if the sedentary jobs cited remained, the VE responded those jobs could still be done. Lastly, the ALJ asked whether the cited jobs required independent judgment in terms of making decisions on how to perform a work task. The VE answered, "The office helper might have some judgment involved, but the other two are pretty routine and repetitive of the same thing." AR 79. Amber's attorney then asked the VE questions and presented the VE with another hypothetical in which the attorney specified the percentage of time the individual would be off task. Amber's attorney also asked about the "brevity or the superficiality" of contact between coworkers and a supervisor and whether an employee could choose to limit that contact. The VE explained contact was "usually" initiated by the supervisor or by the employee to the supervisor if that person needed help. The ALJ then asked whether the cited jobs required tandem functions (no) and sought confirmation that some jobs, by their nature, did not involve a lot of interaction with coworkers and supervisors once the individual learned the job tasks (confirmed in the affirmative). The VE explained the cited job of office helper "may not fit it as well, because they do a variety of tasks, and some tasks might be around other people, and some, they might be doing their own thing." AR 82.

### III

In her Decision, at Step Two, the ALJ determined Amber had the following severe impairments: degenerative disc disease; myalgias; obesity; asthma;

affective disorder; and anxiety disorder. AR 18. At Step Three, the ALJ determined the severity of Amber's mental impairments did not meet or medically equal the criteria of Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). She explained the "paragraph B" criteria of those listings was satisfied where:

> the mental impairments [resulted] in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.

AR 19. The ALJ found Amber had mild limitations in three of the four functional areas. As for the fourth functional area – concentration, persistence, or pace – the ALJ found Amber had moderate limitation. The ALJ lastly explained at Step Three that the limitations identified in the "paragraph B" criteria were not a residual functional capacity assessment but were instead used to rate the severity of Amber's mental impairments at steps two and three of the sequential evaluation process. She further explained that the mental residual functional capacity assessment used at steps four and five required a more detailed assessment, and thus, "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." *Id*.

> The ALJ made the following residual functional capacity finding (RFC):
>
> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds, she can only occasionally climb ramps or stairs and occasionally stoop. She cannot work in concentrated exposure to fumes, odors, dust, gases, poor ventilation or temperature extremes. She can do frequent but not constant bilateral handling and fingering. She is limited to simple, routine, repetitive tasks that can be learned in 30 days or less. The tasks must be easily resumed if the claimant

>has momentary deficits in concentration and attention. She can do no fast-paced work and production must be measured on a daily basis. She can work with no more than occasional changes in work processes and procedures.

AR 20. In support of the RFC finding, the ALJ discussed Amber's physical impairments, and the medical evidence of record pertaining to Amber's physical issues including treatment history, objective findings, MRI results, x-ray results, and hospital and emergency room records. The ALJ also considered Amber's medications, the other measures she used to relieve her symptoms, and her daily activities. The ALJ also addressed the record evidence pertaining to Amber's mental impairments including treatment records, her testimony, her medications, results of her mental status examinations, and her hospitalizations for suicidal ideation.

The ALJ then explained, "Functional restrictions also fail to establish a disabling mental condition." AR 24. The ALJ identified the four functional areas and provided examples for each functional area. After assigning moderate restrictions in Amber's ability to understand, remember, or apply information, the ALJ cited to Amber's completion of schooling in regular classes with "no evidence of retention at any grade level," her work history's failure to evidence difficulties working with or sustaining basic tasks, the record's failure to establish evidence of any significant deterioration in cognitive functioning since Amber stopped working, and claims representatives' reports that Amber could understand and answer questions appropriately during interviews. As for the assigned moderate restriction in Amber's ability to interact with others, the ALJ cited to a lack of evidence of evictions, altercations, or severe isolation, claims representatives' descriptions of Amber as cooperate and appropriate, and Amber's testimony that her friends and family came to visit her and she had a boyfriend. As for the

assigned moderate restriction in Amber's ability to concentrate, persist, or maintain pace, the ALJ noted Amber's physical symptoms, mental symptoms, and drowsiness from medications distracted her to the extent she was limited to simple, routine, repetitive tasks that could be learned in 30 days or less and the tasks "must be easily resumed if the claimant has momentary deficits in concentration and attention." AR 24-25. The ALJ continued that Amber could not do fast-paced work, production was to be measured on a daily basis, and Amber could work with no more than occasional changes in work processes and procedures. The ALJ explained, "All these factors address the claimant's alleged deficits in concentration and attention." AR 25.

In support of her conclusion that further limitations were not established by the record, the ALJ cited Amber's reported ability to pay bills, handle finances, make change, drive short distances, use a stove, care for her daughter, and play board games with her daughter. The ALJ also cited the psychological evaluator's note that Amber's recent and remote memory were intact, and she could recall six digits forward and four backward. The ALJ also noted fall 2014 and early 2015 initial assessments of Amber which indicated Amber had intact attention and memory. Finally, in support of the assigned moderate limitation in Amber's ability to adapt or manager herself, the ALJ cited to the evidence that Amber cared for her personal needs and performed routine household chores and the fact "[t]here is no evidence that the claimant is not aware of normal hazards or cannot take appropriate precautions." *Id*.

IV

A

Amber argues the ALJ's mental RFC is not supported by substantial evidence where: 1) the ALJ erred in making inconsistent findings on the severity of her mental impairments; 2) the ALJ erred in failing to specify the duration and

frequency of her lapses in attention and concentration; and 3) the Commissioner has not sustained his burden of proving that other work exists that Amber can do.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566[2]. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

7

period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Amber claims error on the ALJ's part at Steps Four and Five.

**B**

The Court goes no further than its consideration of Amber's first argument in support of remand – that the ALJ erred in making inconsistent findings on the severity of Amber's mental impairments. For the reasons discussed below, that inconsistency is an error that warrants remand. Amber argues that the mild mental limitations the ALJ found at Step Three of her Decision are patently inconsistent with the moderate limitations the ALJ found when assessing Amber's RFC later in the Decision. She argues that in the explanatory sections of each of the discussed domains, the ALJ downplayed the evidence in the record supporting more severe limitations. She also argues that while the ALJ's finding of mental RFC nominally assessed limitations in pace and concluded Amber had momentary deficits in concentration and attention, there is nothing in the RFC assessment that references any problems interacting with others, remembering or applying information, or in Amber's ability to adapt to changing situations. The Commissioner counters generally that substantial evidence supported the ALJ's evaluation of Amber's mental RFC. The Commissioner further argues that even if the ALJ erred in finding both mild and moderate limitations in the same category, her error was harmless.

It is true that the Step Three determination "is an entirely separate analysis from that required for the RFC determination" which the ALJ acknowledged in her Decision. *Clinton S. v. Berryhill*, No. 17-1492, 2018 WL 6247261, at *7 (C.D. Ill. Nov. 29, 2018). SSR 96-8p provides in relevant part:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [of the adult mental disorders listings] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential

9

> evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p at *4. Nevertheless, the ALJ's Decision must be "consistent within itself and build a logical bridge from the evidence to [her] conclusion." *Holland v. Commissioner of Social Security*, 195 F. Supp. 3d 1011, 1021 (N.D. Ind. 2016); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (explaining an ALJ must articulate some legitimate reason for his decision, and "most importantly," must build an accurate and logical bridge from the evidence to his conclusion). The ALJ's Decision in this case is not consistent within itself.

At Step Three, the ALJ explained that she considered the severity of Amber's mental impairments, singly and in combination, and found they did not meet or medically equal the criteria of Listings 12.04 and 12.06. AR 19. She further articulated that in making that finding, she considered whether the "paragraph B" criteria of those listings were satisfied which, in turn, required her to consider Amber's limitations in the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id*. The ALJ stated, "As detailed more fully below, the claimant's mental impairments do not result in disabling functional limitations." *Id*. She then assigned mild limitation to Amber's ability to understand, remember, or apply information, mild limitation to her ability to interact with others, moderate limitation in her ability to concentrate, persist, or maintain pace, and mild limitation to adapting or managing herself. *Id*. Thus, "Because the claimant's mental impairments do not

cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." *Id*.

In support of her RFC finding at Step Four, the ALJ addressed the extent of Amber's functional restrictions that the former determined were supported by the record. The ALJ assigned moderate restrictions to Amber's ability to understand, remember, or apply information, moderate restrictions in the ability to interact with others, moderate restrictions in the ability to concentrate, persist, or maintain pace, and moderate limitations in the ability to adapt or manage oneself. After assigning moderate limitation in the given functional area, the ALJ in each instance proceeded to note the *lack* of evidence supportive of limitations. As for concentration, persistence, or pace, the ALJ pointed to evidence which showed "further limitations [were] *not* established by the record." AR 25 (emphasis added). The Decision at Step Four reads as if the ALJ inadvertently used the term "moderate" when she meant "mild" limitation. The curious assignment of "moderate" to Amber's limitations is only made more so by the fact the ALJ summarily assigned "mild" to Amber's limitations at Step Three as "detailed more fully below [in the Decision]." AR 19.

Also, the ALJ included in her hypothetical to the VE that the individual "[could] have only occasional interaction with coworkers and supervisors of a brief and superficial nature and no interaction with the public" but left that restriction out of the RFC finding she presented in the written Decision. AR 78. The ALJ also asked the VE whether the cited jobs would "require any independent judgment, in terms of making decisions on how to perform a work task[.]" AR 79. The Court is mindful of the fact that "the RFC assessment is not an end in itself," but is rather a "tool with which the ALJ assesses what work-related activities the claimant can perform despite her limitations". *Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010). Still, whether the ALJ incorporated into the RFC Amber's

11

moderate limitations in the remaining three functional areas is unclear. The ALJ did not explain at the December 2017 hearing and the Court cannot say for certain that the additional questions posed to the VE at the hearing were intended to account for those limitations. In her Decision, the ALJ did not explain how Amber's moderate limitations in three of the four functional areas were accounted for in her RFC finding. Simply put, the Court cannot trace the path of the ALJ's reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The Court is left to wonder what became of the ALJ's determination that Amber had moderate limitations in all four functional areas for purposes of the mental RFC.

The application of the harmless error doctrine in this case does not spare it from remand. The inconsistency within the ALJ's Decision, compounded by her other errors as set forth above, cannot be overlooked. The ALJ's Decision is so messy as to preclude meaningful judicial review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (stating a case must be remanded where the Commissioner's decision is so poorly articulated as to prevent meaningful review). The Court is not convinced the ALJ would reach the same result in this case on remand where the ALJ failed to present a clear result for the Court to consider in the first instance. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). On one final note, the relevant case law provides that it is proper to read an ALJ's decision as a whole. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). To do so here renders the ALJ's Decision illogical. It cannot stand.

**C**

Because the Court has determined remand is warranted due to the inconsistency of the ALJ's Decision, it is unnecessary to address Amber's remaining arguments at this time. However, in light of the additional arguments Amber makes, it is recommended that in the event this matter is remanded the Commissioner ensure not only consistency in its decision but also that particular attention is given to the articulation of Amber's limitations in concentration, persistence, or pace.

**V**

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on July 19, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE